UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| **Edmond "Luc" Davis,** | ) |
| Plaintiff, | ) Civil Action No.: |
| | ) |
| v. | ) **COMPLAINT** |
| | ) **(Jury Trial Demanded)** |
| **Nikki Davis,** | ) |
| Defendant. | ) |

Plaintiff, Edmond "Luc" Davis ("Luc" and/or "Plaintiff"), complaining of Nikki Davis ("Nikki" and/or "Defendant") alleges the following.

## THE PARTIES

1. Luc is an individual residing in this District and Division and having an address in Wake Forest, NC 27857.

2. Luc is a former Navy SEAL and served his country honorably.

3. Nikki is the sister of Luc and is an individual residing at 185 Chanel Street, San Franscisco, CA 94158.

## JURISDICTION AND VENUE

4. There is complete diversity of citizenship between all Plaintiffs and all Defendants.

5. The amount in dispute in this action, exclusive of interest and costs, exceeds the sum of $75,000.

6. Therefore, this Court has jurisdiction over this dispute under 28 U.S.C. § 1332.

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 2201 et. seq. as this case raises a federal question under the Declaratory Judgment Act relating to the inventorship of certain software and the ownership of a patent and/or patent application for

such software. This case raises a federal question under the Declaratory Judgment Act relating to the authorship of certain software and the ownership of the copyrights associated with the Software.

8. The state and common law causes of action are properly before this Court pursuant to 28 U.S.C. §§ 1338(b) and 1367.

9. This Court has personal jurisdiction over the Defendant because Defendant purposely availed herself to this District and Division both in actions and communications.

10. A substantial portion of the acts committed by Nikki and giving rise to this Complaint occurred within this District and Division.

11. At least some of the complained of actions were committed by Nikki when living in this District and/or Division.

12. Nikki knowingly and willingly directed her actions, omission and communications into this District and Division

13. The contract at issue, and acknowledged by Nikki, was formed in this District and Division.

14. Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claim occurred in this District and Division.

15. A substantial part of property that is the subject of the action is situated in this District and Division.

**FACTS**

16. In or around 2014, Luc invented and authored a software application that is directed to the identification of vehicle operators in a manner that alerts law enforcement officers as to the status of the vehicle operator's license to operate the vehicle (the "Software").

17. Amoung other functionality, the Software can assist with determining if a vehicle operator's license is up to date and there are arrest warrants or other issues associated with the license.

18. The Software can cause the vehicle to display an "all clear" indicator such as a light, the color of which can be randomly chosen (on a rotating daily basis) by the governmental agency operating the Software.

19. The Software can determine that if the vehicle operator's license was suspended or expired or if a warrant was associated with the license, in which case the Software would cause the vehicle to display a visual indicator such as a red light that would provide law enforcement probable cause to stop the vehicle and question the driver.

20. Luc is the sole author and/or inventor of the Software.

21. Luc manages, operates and/or updates the Software from Wake Forest, NC.

22. In an email dated January 14, 2025, Nikki expressly acknowledged that Luc was the inventor of the software.

23. The following is a true and correct copy of the email sent from Nikki:

> **From:** Nikki Davis <nikkidavis5614@gmail.com>
> **Date:** January 14, 2025 at 8:28:12 AM EST
> **To:** Arthur Maxwell <bosbear@aol.com>
> **Subject: Attorney Information**
>
> Good morning, Arthur, I'm at a compete loss wondering why do you want my lawyers number? I know it's you asking for it! My brother has never asked for it before. Let's establish one thing… my brother is the inventor, I build this business and I will destroy it before I let you get your hands on any parts of it. I will no longer engage with you in anything remotely related to my business. I know you would try to take over from the first time my brother showed me this project. This is all me!!! My money my blood and my tears. I will never forget what you did to my brother and his sick child. I will let my brother know when Nationwide payment is received.

24. In the above email, Nikki states, "Let's establish one thing… my brother is the inventor."

25. In an email dated December 22, 2024, Nikki stated that Luc is the owner of the intellectual property associated with the Software.

26. On December 22, 2024, Nikki sent the following email:

> From: Nikki Davis <nikkidavis5614@gmail.com>
> Date: December 22, 2024 at 8:11:56 AM EST
> To: Arthur Maxwell <bosbear@aol.com>
> Subject: Re: Moving forward
>
> Get him back on board and we all will be richer behind your wildest dream's. Unfortunately he holds 54% and the IP. So we have nothing without him. He's not on board trust me, I know him. If you can do it it's also in your best interest.

27. In or around 2022, while Nikki was still residing in North Carolina, Nikki entered into an agreement with Luc wherein Nikki would form a legal entity called VOID, LLC ("VOID" or the "Company").

28. Nikki would be responsible for commercializing Luc's Software and VOID would receive the funds from such efforts.

29. Nikki agreed that Luc would own 54% interest in the Company and the revenues received by the Company from the commercialization of the Software.

30. Nikki would serve as an officer within the company who would be in charge of and/or oversee the commercialization efforts for the Software and the finances of the Company.

31. Upon information and belief, VOID was created and Nikki serves as an officer in VOID.

32. Upon information belief, Nikki has been commercializing the Software.

33. Luc's Software has achieved commercial success and is being used by governmental agencies in states including California, Texas, New Jersey and New York.

34. Insurance companies such as Nationwide are purchasing data that is created and/or collected by the Software.

35. Upon information and belief, VOID is receiving substantial revenues from the customers using the Software and/or purchasing the data created and/or collected by the Software.

36. Despite his repeated requests to Nikki, Luc has not received any corporate documents.

37. Despite his repeated requests to Nikki, Luc has not received any monies from Nikki or the Company.

38. Nikki has not provided Luc with access to any of the VOID records, including its financial records. Thus, Luc has no way to verify the exact amount of revenue the company has received from the Software; where those revenues are being kept; or how they are being spent.

39. Nikki has not provided Luc with access to the customer contracts for the sale, license and/or use of the Software so that Luc has no way of knowing what the terms of those contracts are.

40. At the request of one or more customers of the Software, Nikki has agreed to certain updates and/or modifications to be made to the Software by Luc without ever consulting with Luc as to whether such updates and/or modifications should or could be made, the time needed to make such updates and/or modifications and/or the associated costs of making such updates and/or modifications.

41. Luc has not even seen the incorporation documents for VOID and therefore, cannot verify that he has a 54% ownership interest in the Company as was agreed would be the case.

42. In 2024, Nikki represented to Luc that VOID had collected more than $70 Million in revenues from commercialization of the Software.

43. In an email dated December 15, 2024, Luc asked Nikki when he would receive his share of the $70 Million.

44. Nikki responded that she was currently only able to access $1 Million of those revenues "without a heavy imposed penalty."

45. On the following day, December 16, 2024, Nikki assured Luc that his share of the $70 Million would be available for transfer in 2-3 days.

46. On or about February 7, 2025, Nikki transferred $5,000 to Luc, which is far less than his 54% share of the $70 Million.

47. The following email exchange occurred February 7, 2025:

> From: Nikki Davis <nikkidavis5614@gmail.com>
> Sent: Friday, February 7, 2025 15:17
> To: Luc Davis <Luc@lucdavis.com>
> Subject: Re: Bank of America
>
> I promise you that your money is safe and secure. I've not touched one dime of it. Mike money came from my personal account. If you had not changed my travel plans you would've had your money by now. Calm down your money is safe. I would not take anything from you. I'll call you later.
>
> On Fri, Feb 7, 2025 at 15:03 Luc Davis <Luc@lucdavis.com> wrote:
>
> Hey, I just got to the bank to find out that there is only 5k in the account! Am I missing something? 5k is a far cry from 47million! What are we doing? I also noticed that you are not a signer on the account! What happened to us needing two signatures to transfer the funds? I need you to call me back ASAP this is bullshit. I'm waiting for you to call me back now. Don't play with me!!!!!

48. In response to Luc's inquiry regarding the remainder of the money owed, Nikki stated that Luc would have his money no later than February 14, 2025.

49. On February 14, 2025, the following email exchange occurred

> On Feb 14, 2025, at 5:50 PM, Luc Davis <Luc@lucdavis.com> wrote:
>
> Listen I've given you enough time to get this thing together and all I've gotten so far is empty promises. So this is what I'm going to do. I've given Arthur power of attorney to engage you and your attorney to bring this issue to bed. Call us back with your attorney today or tomorrow. I don't wish to shut the portal down because I'm going to take it over and do not want to disturb the clients. Call us back.
>
> From: Nikki Davis <nikkidavis5614@gmail.com>
> Sent: Friday, February 14, 2025 17:17
> To: Luc Davis <Luc@lucdavis.com>
> Subject: Re: Money
>
> It's coming! I promise you that it will be there.
>
> On Fri, Feb 14, 2025 at 15:01 Luc Davis <Luc@lucdavis.com> wrote:
>
> I see no money in the account so far! You said it will be in today! I need to get my kids off the [redacted] streets.

50. The monies promised to Luc were not paid.

51. On February 17, 2025, Nikki instructed Luc to inform her when the money transfer into Luc's account was complete.

52. On February 17, the following email exchange occurred:

> From: Luc Davis <Luc@lucdavis.com>
> Date: February 17, 2025 at 3:00:43 PM EST
> To: Nikki Davis <nikkidavis5614@gmail.com>
> Subject: Re: Portal payment option
>
> Ok, now let's see what the papers say about this business plan.
>
> Get Outlook for iOS
>
> From: Nikki Davis <nikkidavis5614@gmail.com>
> Sent: Monday, February 17, 2025 13:28
> To: Luc Davis Luc@lucdavis.com
> Subject: Portal payment option
>
> Luc, I really don't have a problem with that, as long as I have access to it as well. That's not a bad idea though because it makes collecting payments faster and more efficient.

> Ok I'll get with the clients and get it switched over. Let me know when your money hits the account. Also you might want to get a personal account and keep it separate from the business account. I'll call you later.

53. Luc did not receive on February 17, 2025 any money transfer from Nikki, VOID or any account associated with either.

54. Luc did not receive a business plan for VOID.

55. On February 26, 2025, Nikki sent the following email:

> From: Nikki Davis <nikkidavis5614@gmail.com>
> Sent: Wednesday, February 26, 2025 11:12
> To: Luc Davis <Luc@lucdavis.com>
> Subject: Re: Paper to sign?
>
> I don't have my attorney in my purse. They will have it to you today at some point. Sign it and send it back to them and you'll have your money immediately. There are 97 million dollars in the account and I've not touch one dime of it! Of which 54 percent of it is yours. Let me know when you receive the document and sign it.

56. Under their arrangement, Nikki communicated to Luc that he is entitled to 54% of 97 million dollars.

57. Nikki did not transmit or have transmitted the referenced papers.

58. Luc did not sign any papers.

59. Despite his repeated requests to Nikki, Luc has not even received contact information for Nikki's attorney.

60. On February 27, 2025, Nikki emailed Luc a screenshot of a bank account balance purporting to be $97,252,000.09.

61. The following email was sent from Nikki to Luc on February 7, 2025.

> **From:** Nikki Davis <nikkidavis5614@gmail.com>
> **Sent:** Thursday, February 27, 2025 21:58
> **To:** Luc Davis <Luc@lucdavis.com>
> **Subject:** Our account balance
>
> I'm not stealing from you! Either one of us can get anything from it without the other!

Page 8 of 16

Case 4:25-cv-00086-FL     Document 1     Filed 05/19/25     Page 8 of 16



62. Upon information and belief, Nikki has been diverting revenues received from the commercialization of the Software, its associated hardware and/or the data created and/or collected by the Software.

63. Upon information and belief, the $97 Million is only a portion of the revenues that have been received from the commercialization of the Software, its associated hardware and/or the data created and/or collected by the Software.

64. Upon information and belief, Nikki has and will continue to divert and spend Luc's share of the revenues from the commercialization of the Software such that Luc will never be able to recoup the his full share of the Software revenues.

65. Nikki stated that if Luc would assign ownership of certain designs and/or platforms to Nikki, she would "walk away from Void" and transfer to Luc his share of the revenue received from the commercialization of the Software and/or its associated hardware and/or data.

66. Luc agreed that he would assign ownership of the requested designs and/or platforms to Nikki in exchange for her disassociation with VOID, and her transfer of Luc's share of the revenues received from the Software and/or its associated hardware and/or data, including all monies that Nikki has diverted, converted and/or withheld.

67. Despite Luc's agreement to assign to Nikki ownership of the requested designs and/or platforms, Nikki has neither provided the ownership assignment documents that she said she would provide to Luc, disassociated herself from VOID nor transferred Luc his share of the Software revenues.

68. On May 11, 2025, Luc's counsel asked Nikki to provide the name of Nikki's attorney so that resolution of the dispute between Luc and Nikki could be discussed.

69. Nikki did not provide any information regarding an attorney who could be contacted regarding this dispute.

## FIRST CAUSE OF ACTION
### Breach of Contract

70. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

71. Luc and Nikki entered a valid contract that was supported by sufficient consideration wherein Luc would provide Nikki with access to the Software and a license to commercialize the Software to third parties and Nikki would form VOID, LLC in which Luc would have a 54% ownership interest and entitlement to 54% of the revenues received from the commercialization of the Software.

72. Luc has fulfilled his part of the bargain by providing Nikki with access to the Software and allowing her (through VOID, LLC) to commercialize the Software.

73. Nikki has breached the contract by failing to provide Luc with his share of the Software revenues.

74. Upon information and belief, Nikki has breached the contract by failing to form VOID, LLC in a manner that provides Luc with a 54% ownership interest, a right to control the company and/or a right to access any of the company's documents, information, data and/or revenues.

75. Nikki entered into a second contract with Luc wherein Nikki agreed to disassociate from VOID, LLC and to transfer to Luc his share of the Software proceeds if he would assign to Nikki ownership to certain designs.

76. Luc performed and/or agreed to perform his obligations under the contract.

77. Nikki has failed to fulfil her obligations under the contract.

78. Nikki's failure to perform her contractual obligations constitutes breach of contract.

79. Nikki's breach of contract has damaged Luc in an amount to be determined at trial but in excess of $48 Million.

**SECOND CAUSE OF ACTION**
**Conversion**

80. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

81. Despite Luc's entitlement to his share of the Software revenues and his repeated request for his share to be delivered, Nikki has refused to deliver those funds, which rightfully belong to Luc.

82. Upon information and belief, Nikki has used and continues to use Luc's share of the Software revenues for her own purposes.

83. Nikki's use and/or retention of Luc's share of the Software revenues is without Luc's consent.

84. Niki's actions constitute conversion.

85. Niki's actions have damaged Luc in an amount to be determined at trial but in excess of $48 Million.

**THIRD CAUSE OF ACTION**
**Fraud**

86. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

87. Nikki has made numerous false statements to Luc, with the knowledge that such statements were false at the time they were made and with the intention of deceiving Luc and inducing him to enter a contract with Nikki and/or to allow Nikki to continue to commercialize the Software while retaining all the associated proceeds.

88. To induce Luc to enter the contract, Nikki falsely stated she would form a company in which Luc would have a 54% ownership interest and as a result entitlement to 54% of the revenues received from the commercialization of the Software and access to all the Company's documents, information, data and finances.

89. When these statements were made Nikki had no intention of forming a company in the manner represented.

90. The above statements were made with the intention of deceiving Luc and causing him to enter a contract he otherwise would not have.

91. The above statements did deceive Luc and caused him to enter a contract he otherwise would not have.

92. After the contract was entered, Nikki knowingly made numerous false statements regarding her inability to access the Software revenues, the timing of when Luc's share of the Software revenues would be transferred to him and the reasons why the transfer of such revenues was being delayed.

93. Nikki knew that each of these statements were false at the time they were made.

94. Nikki made these statements with the intention of deceiving Luc into believing that his share of the Software revenues was forth coming.

95. These statements did in fact deceive Luc and caused him to delay taking action to recover his money, thus allowing Nikki additional time to convert, use and/or hide additional money that may have otherwise been recovered by Luc.

96. Nikki's fraudulent statements have caused Luc actual damages in an amount to be determined at trial but in excess of $48 Million.

## FOURTH CAUSE OF ACTION
### Negligent Misrepresentation

97. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

98. As an officer of VOID, LLC and a business partner to Luc, Nikki owed a duty to ensure that the information that she conveyed to Luc was truthful and/or accurate.

99. Nikki breached that duty by making several inaccurate and false statements regarding the corporate structure of VOID, LLC; Luc's rights within the Company, Luc's ability to access information of the Company; Luc's ability to access the Company's revenues; Nikki's

ability to access the Software revenues; the timing of when Luc's share of those revenues would be transferred; and the reasons that the transfer of those funds was being delayed.

100. Given Nikki's role as an officer of VOID, LLC as well as Luc's business partner and sister, Luc was justified in relying on Nikki's statements.

101. Luc's reliance on the information prepared by Nikki caused Luc actual damages in an amount to be determined at trial but in excess of $48 Million.

### FIFTH CAUSE OF ACTION
### Breach of Fiduciary Duty

102. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

103. Nikki is a manager, officer and/or director of VOID, LLC.

104. Luc is at least a member of VOID, LLC. Luc may also be a manager, officer and/or director of the company.

105. Nikki owes a fiduciary duty not only to the Company but to its members, managers, officers and/or directors.

106. Nikki breached her fiduciary duty by making fraudulent statements to Luc regarding the Company, its structure, its finances and/or its business dealings; converting company funds for her own use; converting Luc's share of the Software proceeds for her own use; and refusing to provide Luc with access to any of the Company's documents, information, data and/or finances.

107. Nikki's breach of her fiduciary duty has caused Luc actual damages in an amount to be determined at trial but in excess of $48 Million

### SIXTH CAUSE OF ACTION
### Declaratory Judgment – Inventorship / Patent Ownership

108. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

109. Luc is the sole inventor of the Software.

110. Nikki has expressly acknowledged that Luc is the inventor of the Software.

111. Upon information and belief, Nikki caused to be filed a patent application that fails to name Luc as the inventor and/or the applicant / owner of the application.

112. Upon information and belief, the patent application filed by Nikki names either Nikki or VOID, LLC as the applicant / owner of the patent application.

113. Luc has not assigned his patent ownership rights to either Nikki or Void, LLC.

114. Nikki caused the patent application to be filed knowing that neither she nor VOID, LLC had any ownership right in the Software.

115. Luc is entitled to an order declaring him as the sole inventor, applicant and/or owner of any patent and/or patent application directed towards the Software that Luc invented.

## SEVENTH CAUSE OF ACTION
### Declaratory Judgment – Copyright Authorship

116. To the extent not inconsistent with the below allegations, Plaintiff realleges the allegations contained in the above paragraphs as if fully repeated herein.

117. Luc is the sole author of the Software.

118. Nikki has expressly acknowledged that Luc is the owner of the Software.

119. Luc has not assigned his copyright rights to either Nikki or Void.

120. Luc is entitled to an order declaring him as the sole author of the Software and the copyrights associated with the Software that Luc created.

**WHEREFORE**, Edmond "Luc" Davis hereby request a jury determination of the issues raised and prays that this Court and/or the trier of fact award the following relief:

A. A determination that Defendant's actions constitute breach of contract;

B. A determination that Defendant's actions constitute conversion;

C. A determination that Defendant's actions constitute fraud;

D. A determination that Defendant's actions constitute negligent misrepresentation;

E. A determination that Defendant's actions constitute breach of a fiduciary duty;

F. A declaration that Plaintiff is the sole inventor, applicant and owner of any patent application and/or patent directed towards the Software created by Plaintiff.

G. A declaration that Plaintiff is the sole author of the Software created by Plaintiff.

H. A determination that Defendant's acts were committed willfully;

I. An award of damages suffered by Plaintiff, the amount of which is to be determined at trial;

J. An award of punitive damages, the costs of the action and if appropriate, attorney's fees; and,

K. For such other relief as this Court deems just and proper.

L.

Respectfully submitted,

KIM AND LAHEY LAW FIRM, LLC

s/Douglas W. Kim
Douglas W. Kim (Fed 9004 NC Bar 25620)
Hunter S. Freeman (Fed #9313 SC Bar 71752)
3620 Pelham Road, PMB 213
Greenville, SC 29615
Telephone: 864-973-6688
Date: May 19, 2025
Email: doug@kimandlahey.com
Email: hfreeman@kimandlahey.com

*Attorneys for Plaintiff*